```
             UNITED STATES DISTRICT COURT FOR THE
                 MIDDLE DISTRICT OF PENNSYLVANIA
MAURICE OWENS,                    :
                                  :
          Plaintiff               :   No. 4:CV-04-1850
                                  :
     vs.                          :   (Complaint Filed 08/19/04)
                                  :
                                  :   (Judge Muir)
JOSEPH T. WHALEN, et al.,         :
                                  :
          Defendants              :
```

**ORDER**

February 8, 2006

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Plaintiff, Maurice Owens, ("Owens"), an inmate confined in the Mahanoy State Correctional Institution, Frackville, Pennsylvania, ("SCI-Mahanoy"), filed the above captioned civil rights complaint pursuant to 42 U.S.C. § 1983. He alleges that defendants have violated his constitutional right to express his religion by denying him a hair length exemption to the Department of Corrections ("DOC") grooming policy. (Doc. No. 1, complaint). For relief, Owens seeks a hair length exemption to the inmate grooming policy, a return to the general population and $40.00 per month in "back pay" for the time he has spent in disciplinary custody while in the Restricted Housing Unit ("RHU") at SCI-Mahanoy.

Named as defendants are Edward Klem, SCI-Mahanoy

Superintendent; Joseph Whalen, SCI-Mahanoy Chaplain; Jeffrey Beard, Department of Corrections Secretary; David Roberts, Supervisor, Bureau of Inmate Services, Camp Hill, Pennsylvania; and Sharon Burks, Chief Grievance Coordinator, Camp Hill, Pennsylvania.  Presently before the court is defendants' motion for summary judgment.[1]  (Doc. No. 22).  The motion is fully briefed and is ripe for disposition.  For the reasons set forth below, the defendants' motion for summary judgment will be granted.

**I.   Summary Judgement Standard**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties

---

1. Defendants' motion was initially filed as a motion to dismiss. (See Doc. No. 19). Defendants then filed a motion to amend/correct the caption of their motion to dismiss, to that of a motion for summary judgment. (Doc. No. 21). Defendants' motion to amend/correct will be granted.

2

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no _genuine_ issue of _material_ fact."  Anderson vs. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  <u>Anderson</u>, 477 U.S. at 248; Gray vs. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 257; Brenner vs. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party.  Moore vs. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement vs. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White vs. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the

3

party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Celotex Corporation vs. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Industrial Co. vs. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.  See Harter vs. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**II.  Undisputed Facts**

From the pleadings and exhibits submitted by the parties therewith, the following facts can be ascertained as

4

undisputed.

Owens was convicted in 1991 for robbery and sentenced to a term of incarceration of 16 to 35 years. He was committed to the Department of Corrections on August 16, 1991. (Doc. No. 23, Ex. A).

On April 25, 2003, Plaintiff submitted a DC-52 form, "Inmate Religious Accommodation Request Form", requesting to be exempt from the DOC's hair length regulation.[2] (Doc. No. 25, Ex. 3). Plaintiff, however, did not list his religious affiliation. Id. On June 3, 2003, his request was denied. (Doc. No. 25, p. 2). When Owens inquired of Father Whalen as to the denial of his request, he was informed that because his prison records listed him as a Muslim, he was not entitled to an exemption. Id. Father Whalen suggested that Owens write to the records department to request a change in his religious affiliation. Id. On June 12, 2003, Owens wrote to the records department, requesting his religion be changed to Rastafarian. Id.

On August 25, 2003, Owens filed Grievance No. 60382,

---

2. DOC-ADM 807, the the Inmate Hygiene and Grooming Policy, governs the length of inmate's hair while incarcerated. In July, 2002, the DOC issued ADM 819, Religious Activities, which establishes the policy and procedure to accommodate inmates' religious beliefs while they are in the custody of the DOC.

grieving the fact that he had not been granted a hair exemption. (Doc. No. 23, Ex. C). On September 8, 2003, Grievance Officer Unell responded with the following:

> This is in response to your grievance (Grievance # 60382) dated 8/25/03. I note that I met with you on Thursday, September 4, 2003 to discuss your grievance concerns and answer any questions you had.
>
> Essentially, you are grieving the fact that you have not been granted a hair exemption. You state that you are a practicing Rastafarian. I note that during our meeting, I explained the existing process and procedure for requesting a hair exemption. I also provided you with a blank copy of a DC-52 form "Inmate Religious Accommodation Request Form", and answered all your questions.
>
> You reported to me that you understood the process and in fact, had earlier submitted an inmate religious request form to Facility Chaplain Program Director Whalen. You stated that you had spoken to Fr. Whalen concerning your hair exemption request. You also reported that your request for accommodation was disapproved. Fr. Whalen advised you that you are claiming to be Rastafarian, although your record/face sheet indicated that you are of the Islamic religion. You then requested to have that indication changed to Rastafarian. Mr. Calkins reported to you, per request slip, that your indicated religion was, in fact changed to Rastafarian. I explained to you that changing your religious preference, as documented in your record, does not in itself, qualify you for a hair exemption. I also advised you that unless a hair exemption is granted, you are expected to abide by existing DOC policy and procedures (DC-ADM 807) with regard to your personal hygiene. Failure to abide by the Inmate Hygiene and Grooming Policy will result in you receiving a misconduct, unless you are granted a hair exemption.
>
> In that no violations of DOC policy, nor

>    inappropriate action by staff is evident, no further
>    action is recommended with regard to this grievance.
>
>    Again, you are advised to follow existing procedures.
>    Should you feel you are deserving of a religious
>    accommodation/hair exemption, you may request one.
>    This will require that you submit a DC-52 form,
>    including all the information that is called for.
>    The request then will be evaluated and approved or
>    disapproved, based on the information provided.

(Doc. No. 23, Ex. C).

On September 4, 2003, Owens submitted another DC-52 form, requesting a hair length exemption based on his claimed religion of that of Rastafarian. (Doc. No. 25, Ex. 4). On October 2, 2003, Father Whalen responded to Owens, that he "must wait until Dec. 6, 2003." Id.

On April 29, 2004, Owens submitted an Inmate' Request to Staff member, questioning why he was turned down a second time for a hair length exemption. (Doc. No. 1, attachment). Plaintiff's Inmate Request states in pertinent part:

>    This is in response to the response you send me
>    4/26/04. I ask you to explain to me why I was turned
>    down a second time for a hair length exemption. You
>    said because I don't present anything new or
>    different from my first request! I changed my
>    religion to Rastafarian that wasn't on the first
>    request. J.K. Kane the hearing examiner said
>    Rastafarians are exempted! You called the records
>    dept. the first time and claimed that was the
>    deciding factor. Now your using what John Corbacio
>    used in a response for Superintendent Klem about I
>    didn't present anything new to change the initial

7

recommendation.

Id. In response, Father Whalen, informed plaintiff of the following:

> I advised Mr. Corbacio on his response. That means it was really my response! Rastafarians are exempt – the question is are you <u>sincerely</u> a Rastafarian?

Id.

On July 26, 2004, Owens submitted a third DC-52, seeking a hair length exemption on the basis of his Rastafarian beliefs. (Doc. No. 23, Ex. E). On August 3, 2004, Father Whalen, denied the request, stating that it could not "be accepted until January 26, 2005." Id.

On July 30, 2004, Owens submitted another Inmate's Request to Staff Member, again questioning his entitlement to a hair length exemption. (Doc. No. 23, Ex. D). On August 4, 2004, Father Whalen responded:

> I am far too busy to be answering your requests day after day, especially since they are nothing but disagreement over my decision to not recommend a hair exemption. As I told you before, get out of the RHU, practice your faith, and I'll see you in January of 2005, the next time you can apply for a hair exemption (you must wait ½ year between requests).

Id.

On August 19, 2004, plaintiff filed the instant action, claiming that defendants' denial of his request for a hair length exemption violates the First, Eighth and Fourteenth

Amendments of the Constitution.  (Doc. No. 1, complaint).

On December 10, 2004, plaintiff was released from the RHU. There is no evidence of record that Owens re-applied for a hair length exemption after being released from the RHU.

**III  Discussion**

It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell vs. Wolfish, 441 U.S. 520, 545 (1979). "Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." O'Lone vs. Shabazz, 482 U.S. 342, 348 (1987) (citations omitted). Constitutional rights, however, such as the right to practice religion, may be reasonably restricted in order to facilitate the maintenance of proper discipline and order within the prison. Valid penological objectives, such as deterrence of crime, rehabilitation of prisoners, and institutional security, justify limitations on the exercise of constitutional rights by prisoners. See Jones vs. North Carolina Prisoners' Labor Union, 433 U.S. 119, 132 (1977); Pell v. Procunier, 417 U. S. 817, 822-23 (1974). As such, a prison inmate "retains [only] those rights that are not

9

inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell, 417 U. S. at 822.

Section G of DC-ADM 819 (formerly DOC-ADM 807), sets forth the procedures that an inmate must follow in order to obtain an exemption to the grooming policy for legitimate religious purposes, and provides as follows:

> A request for a religious accommodation that is not covered elsewhere in Department policy shall be made as follows:
>
> a. Each inmate must use a DC-52, Inmate Religious Accommodation Request Form to submit his/her request for accommodation to the [Facility Chaplain Program Director]
>
> b. In cases of an inmate request for an exemption from Department policy DCADM 807, "Inmate Grooming and Barber/Cosmetology," the inmate must submit a DC-52 within 15 working days of receiving the order to cut his hair. If no DC-52 is submitted within 15 working days of the initial order to cut his hair or no religious accommodation is claimed, the inmate shall be subject to discipline in accordance with Department policy DC-ADM 801, "Inmate Discipline."
>
> c. The inmate shall obtain written information from his/her outside faith group, including any publications that describe the goals, beliefs, and practices of the group and supply this information to the FCPD for review.
>
> d. The Religious Accommodation Review Committee shall review each inmate's request for a religious accommodation within 45 days of receipt and forward a recommendation to the affected Regional Deputy Secretary.

    e. The Regional Deputy Secretary shall, within 15 days of receiving the recommendation from the Director of the Bureau of Inmate Services/designee, approve/disapprove the request and notify the Director of the Bureau of Inmate Services of the decision.

    f. The Director, Bureau of Inmate Services shall, within 10 days, inform the Facility Manager and the FCPD of the requesting facility of the determination and ensure copies of all final determinations are provided to all Deputy Secretaries and Facility Managers. The FCPD shall be responsible for informing the affected inmate of the outcome of his/her request no later than 10 working days from the date that the determination of approval/disapproval is received.

    g. If an inmate is informed by the FCPD that the request will not be accommodated, the inmate may then file a grievance in accordance with Department policy DC-ADM 804, "Inmate Grievances." Grievances may only be submitted after the inmate has received notification of the decision on the requested accommodation.

    h. If an inmate is found not to comply with the accommodation or the reasons for the accommodation, the accommodation may be revoked. If appropriate, the violation shall be handled in accordance with Department policy DC-ADM 801,"Inmate Discipline."

DC-ADM 819, Religious Activities Policy.

    The Court of Appeals for the Third Circuit has upheld the validity of DC-ADM 807, now DC-ADM 819, in the context of hair length requirements. In Cole vs. Flick, 758 F. 2d 124 (3d Cir.), cert. denied, 474 U.S. 921 (1985), DC-ADM 807 was enforced against a Native American Indian. The prison officials offered the following justifications for the hair

11

length regulation: (1) internal security, insofar as long hair could be used to conceal or transport contraband, including weapons or drugs, or by thwarting identification; (2) sanitation concerns, in that long hair increases the risk of lice and infection, particularly with respect to those inmates working in mail and food services; (3) to assist in controlling homosexual activity within the prison; and (4) to prevent the possibility that institutional security would be jeopardized by selective enforcement of institutional directives. Id. at 126-27. The Court of Appeals found that the justifications were all clearly legitimate in that they are directly related to prison security, and that DC-ADM 807 did not represent an exaggerated response to those concerns. Id. at 129-32. DC-ADM 807 was also upheld by the Court of Appeals in Dreibelbis vs. Marks, 742 F.2d 792 (3d Cir. 1984,) and Wilson vs. Schillinger, 761 F.2d 921 (3d Cir. 1985). In these cases, the plaintiffs were a member of the Church of Prophetic Mediation and a Rastafarian, respectively.  The same reasoning was used by the court in upholding the hair length requirement of DC-ADM 807 when confronted with a First Amendment freedom of religion challenge.

    Subsequent to the decisions of  Court of Appeals for the

Third Circuit in <u>Cole</u>, <u>Dreibelbis</u> and <u>Wilson</u>, the United States Supreme Court decided the case of Turner vs. Safley, 482 U.S. 78, 89 (1987). In <u>Turner</u>, the Court set forth the standard for reviewing a prison regulation challenged by an inmate on constitutional grounds. The Court held that "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interest."  The Court set forth four factors which must be considered when determining the reasonableness of the prison regulation at issue.  This standard implies a balancing test that must be applied between the prisoner's claims and the prison's need of internal order and security.  The <u>Turner</u> standard, as reviewed by the Court of Appeals for the Third Circuit in Dehart vs. Horn, 227 F.3d 47, 51 (3d Cir. 2000), involves several considerations.

First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.  Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.  In addition, the governmental objective must be both a legitimate and neutral one. Second,

13

a court must consider whether an inmate retains alternative means of exercising the asserted right. A third consideration is the impact the accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally. Finally, the court must consider what ready alternatives exist to the challenged prison regulation that fully accommodate the prisoner's rights at a de minimus cost to valid penological interests. Dehart, 227 F.3d at 51, citing Turner, 482 U.S. at 89-91.

However, an inmate's mere assertion of a religious belief does not automatically trigger application of the Turner factors. It is well-established that only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection. Dehart, 227 F.3d at 51, citing Africa vs. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981). If an inmate does not establish that his beliefs are sincerely held and religious in nature, thus establishing a constitutionally protected interest, then the Turner analysis of a hair length regulation need not be conducted.

In this case, Owens has yet to establish that his Rastafarian beliefs are sincerely held and religious in nature. In 1999, at the time of his commitment to the DOC,

14

Owens' declared himself a Muslim. It was not until, 2003, that Owens' sought to change his religious designation to that of Rastafarian. The record reveals, however, that Owens did not progress much beyond the designation, to demonstrate his sincerity in the religion. Indeed, in this case, the DOC was not denying Owens' sincerity, but was in the process of properly determining his sincerity, before approving an exemption. Thus, Owens' situation illustrates the difficulty that prison administrators would encounter in determining whether beliefs about hair length are religious in nature and sincerely held. There is no dispute that Owens is both aware of DC-ADM 819 and has had the policy explained to him. It is also undisputed that he has not obtained an exemption to the hair length regulation. Clearly, under these facts and prevailing precedent, defendants have not violated Owens' rights to freedom of religion under the First Amendment. Even assuming that a constitutionally protected right is at stake here[3], the Court finds that a valid, rational connection exists between DC-ADM 819 and legitimate prison concerns. Thus, summary judgment in defendants' favor is warranted.

---

3. That is, assuming that Owens can establish that his beliefs as to his hair length are religious in nature and sincerely held.

15

Owens' equal protection argument is also without merit. The Equal Protection Clause of the Fourteenth Amendment requires all persons "similarly situated" to be treated alike by state actors. See City of Cleburne, Texas vs. Cleburne Living Center, 473 U.S. 432, 439 (1985). Therefore, Owens must show that he was similarly situated to, and treated differently from, other inmates. See Tillman vs. Lebanon County Correctional Facility, 221 F.3d 410, 424 (3d Cir. 2000); Keenan vs. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992).

Although Owens contends that "many inmates have longer hair than [him] in population", (Doc. No. 1, complaint), he has failed to come forward and offer any evidence in support of his allegation that any inmate without an exemption who has long hair in violation of DC-ADM 819 is being permitted to remain in the general population. Thus, Owens' unsupported assertions cannot withstand defendants' motion for summary judgment.

Finally, to the extent that Owens claims his stay in disciplinary confinement violated his due process rights, he is mistaken. Such a claim does not state a constitutional violation because it does not result in an "atypical and

16

significant hardship in relation to the ordinary incidents of prison life." Sandin vs. Conner, 515 U.S. 472, 484,(1995).

**IT IS HEREBY ORDERED THAT:**

1. Defendants' motion to amend/correct the caption of their motion to dismiss (Doc. No. 21) is **GRANTED**.

2. Defendants' motion to dismiss (Doc. No. 19) is **DISMISSED**.

3. Defendants' motion for summary judgment (Doc. No. 22) is **GRANTED**.

4. Plaintiff's "Motion to Clarify", (Doc. No. 25), is construed as his brief in opposition to defendants' motion for summary judgment, and the Clerk of Court is directed to docket the motion as such.

5. The Clerk of Court shall enter judgment in favor of defendants and against plaintiff.

6. The Clerk of Court shall **CLOSE** this case.

7. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

                s/Malcolm Muir  
                MUIR  
                United States District Judge